IN THE UNITED STATES DISTRICT COURT FOR
                THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                        *
AARON KENNEDY YOUNG,
                                        *
        Plaintiff,
                                        *      CIVIL NO.: WDQ-06-1626
v.
                                        *
SOLO CUP COMPANY, A/K/A
SWEETHEART CUP COMPANY,                 *

        Defendant.                      *

*       *       *       *       *       *       *       *       *       *       *       *       *

                          MEMORANDUM OPINION

        Aaron K. Young sued Solo Cup Company ("Solo") for

discrimination in violation of Title VII of the Civil Rights Act

of 1964,[1] the Baltimore City Code,[2] and Maryland anti-

discrimination law;[3] and for common law detinue and wrongful

discharge, arising out of his employment relationship with Solo.

Pending is Solo's motion for summary judgment, which, for the

reasons discussed below, will be granted in part and denied in

part.


I.  Background

        Young originally filed suit in the Circuit Court for

Baltimore City.  On June 22, 2006, Solo removed the action to

_____

        [1] 42 U.S.C. §§ 2000e et seq.

        [2] Balt. City Code art. IV § 3-1.

        [3] Md. Ann. Code art. 49B

                                1

this Court pursuant to 28 U.S.C. § 1331 because the complaint alleged violations of Title VII, a federal statute.[4]

Solo manufactures paper products for retail and food service industries. For four months in 2004 beginning in July, Young, an African-American who turned 23 years old while at Solo, was trained to become and worked as a production mechanic at Solo's Owings Mills, Maryland facility.

Young worked in Solo's tub section, which produces plastic and paper tubs by precisely calibrated machines. Young's job required him to ensure that the machines assigned to him operated correctly and continuously. Solo required him to use his own tools to make adjustments. At first, Young worked the second shift, but in late September he switched to the third shift, where his supervisor was Marsha Kipke and his group lead was Matt Guerin.

Guerin and Kipke believed that Young's adjustments reduced the productivity of his machines. Guerin Aff. ¶ 7; Young Dep. at 45. In November 2004, ostensibly to prevent Young from making counter-productive adjustments, Guerin instructed Young to work without his tools for two hours, after which his tools were returned. On December 1, 2004, Guerin again took Young's tools for the same reason. Other employees, including at least one

---

[4] There is no diversity jurisdiction as Solo is a Maryland corporation with its principal place of business in Maryland and Young is a resident of Maryland.

other African American and one Caucasian, have had their tools taken for similar reasons.  Kipke Aff. ¶ 7.

On December 2, 2004, Young complained to Kipke about the confiscation of his tools, which prevented him from adjusting his machines.  Kipke told Young that his tools were taken because some of his adjustments had negatively affected the operation of his assigned machines.  Young Dep. at 45.  That same day, Young also complained to Mike Valenzia, the production manager of the tub section, who confirmed with Kipke the reason for the taking of Young's tools.  Subsequently, Young left work early.  *Id*. at 61

On December 3, 2004, a Friday, Kipke gave Young an oral warning for unacceptable attendance which was confirmed in writing.  Mem. Supp. Mot. Ex. 2 (Hourly Attendance Disciplinary Action Form).  The next week, Young did not report to work and on Wednesday, December 8, 2004, he called Kipke and asked if he still had a job.  Told yes, provided that he reported to work for his next shift, he informed her that he did not know if he would do so.  Young Dep. at 74-76.  Young did not report to work for that shift and on December 9, he came in to pick up his final paycheck.

II.  Analysis

In its motion Solo argues that: (1) the Baltimore City Code is inapplicable because Solo is not located in Baltimore City; (2) Maryland's anti-discrimination statute does not create a private right of action; (3) the claim for wrongful discharge is barred; (4) Young's cause of action for detinue is misdirected; and (5) Solo is entitled to judgment on Young's Title VII claims. In response, Young concedes that no cause of action exists under: (1) the Baltimore City Code; and (2) Maryland's anti-discrimination statute.  Accordingly, summary judgment will be granted in favor of Solo on Counts II and III.  Young, however, challenges Solo's motion as to the other counts.

A.    Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The opposing party, however, must produce evidence upon which a reasonable fact

4

finder could rely.  *Celotex*, 477 U.S. at 317.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

B.   Title VII

Count I of Young's complaint somewhat ambiguously mentions two sections of Title VII, §§ 2000e-2 and 2000e-3 but the allegations establish that Count I states two causes of action: (1) hostile work environment; and (2) constructive discharge.[5]

1.   Hostile Work Environment

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  As the workplace environment is one of the "terms, conditions, or privileges of employment," individuals have a cause of action if forced to work in a hostile workplace. *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).

To prove that Solo created a hostile work environment, Young must demonstrate that the harassment was (1) unwelcome; (2) based

---

[5] In addition, in its memorandum supporting its motion, Solo characterized these as the two causes of action stated in Count I and Young did not challenge this interpretation.

on his race; and (3) sufficiently severe or pervasive to alter
the conditions of employment and create an abusive atmosphere; in
addition, Young must also prove some basis for imposing liability
on Solo. *Gilliam v. South Carolina Dept. of Juvenile Justice*,
474 F.3d 134, 142 (4th Cir. 2007).  Title VII is violated when
the workplace is "permeated with discriminatory intimidation,
ridicule, and insult that is sufficiently severe or pervasive to
alter the conditions of the victim's employment and create an
abusive working environment." *Harris v. Forklift Systems, Inc.*,
510 U.S. 17, 21 (1993) (internal quotations omitted).

    "[W]hether an environment is 'hostile' or 'abusive' can be
determined only by looking at all the circumstances." *Id*. at 23.
A court should consider "the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance."
*Id*.  Whether any psychological harm resulted is also relevant.
*Id*.  "[S]imple teasing, off-hand comments, and isolated incidents
(unless extremely serious) will not amount to discriminatory
changes in the terms and conditions of employment." *Jordan v.
Alternative Resources Corp.*, 458 F3d 332, 339 (4th Cir. 2006)
(*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788
(1998)).  Indeed, the "mere utterance of an ethnic or racial
epithet" is not sufficient. *Meritor Sav. Bank, FSB v. Vinson*,

6

477 U.S. 57, 67 (1986) (*citing Rogers v. EEOC*, 454 F.2d 234, 238
(5th Cir. 1971), cert. denied, 406 U.S. 957 (1972)).

Solo argues that a reasonable jury could not find for Young
because he was not subjected to harassment that was: (1) based on
his race; and (2) sufficiently severe or pervasive.   Young
counters that the individual events, when viewed together,
demonstrate that Guerin created a hostile work environment.

In November 2004, Young asked Guerin how to get a raise or
promotion and Guerin told Young that he would have to dye his
hair blonde to become a supervisor or group lead.   Young Dep. at
84-86.   During that same conversation, Guerin also told Young
that Young could make more money in front of his house.   *Id*. at
86-87.   The Court agrees that this remark may be reasonably
interpreted as a reference to drug dealing because Guerin: (1)
knew that Young lived in or near a housing project; and (2)
referred to Young as a drug dealer and a "gang person."   *Id*.   In
another conversation, Guerin asserted that Young walked by
several liquor stores on the way to work and said "how about you
bring me a fifth or six pack in here every once in a while."   *Id*.
at 88.   Moreover, Young also stated that Guerin would frequently
make comments about Solo not being "the hood" and about dyeing
Young's hair blonde.   Young Dep. at 89.   In addition, when a co-
worker described as "West Indian" was having trouble with his
machine, Guerin told Young to help him because Young was "closer

7

to his color." *Id*. at 92-93.

Although Guerin frequently called Young "boy," *id*. at 93, Young stated that being called boy was a reference to both his age and his race because he was the youngest on a team that included a 27 year old and three others at least 10 years older than Young.  Young Dep. at 123-24, 127.  Moreover, Young noted that Guerin referred to other, older African Americans by saying 'mister' and then the person's last name.  *Id*. at 127-28.

Viewing the interactions between Guerin and Young as a whole, the Court finds that Guerin's comments were either explicitly or implicitly racially motivated.[6]  Moreover, the use of the term 'boy,' in conjunction with Guerin's other comments, has unmistakable racist connotations.  Considering the facts and reasonable inferences drawn therefrom in the light most favorable to the plaintiff, the content and frequency of Guerin's comments are sufficient evidence for a reasonable jury to find that Guerin created a hostile work environment.

2.   Constructive Discharge

To prove constructive discharge, Young must show that Solo "deliberately made his working conditions intolerable in an

---

[6] In addition, although the testimony is not clear from the record provided, as the deposition provided was incomplete, Young stated that: (1) Guerin laughed when he took Young's tools away, Young Dep. at 84; and (2) his trainer told him that his tools were taken away because he is black, *id*. at 48.

effort to induce him to quit." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (*quoting Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001)). Thus, Young must prove: (1) the deliberateness of Solo's actions, motivated by racial bias; and (2) the objective intolerability of the working conditions. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004).

A constructive discharge claim related to a hostile work environment claim requires 'something more' than the proof necessary for a successful hostile work environment claim. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-47 (2004). In addition, the Fourth Circuit has stated that "[b]ecause the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." *Id*. at 187 (*quoting Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir. 1989). The Court has held that "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id*. (*quoting Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004).

Solo contests only the intolerability element of Young's claim. For the reasons discussed in the hostile work environment discussion, a reasonable jury could find that: (1) Young did not

simply feel dissatisfied with work assignments or unfairly criticized; and (2) the harassment to which Young was subjected made his working conditions intolerable.

However, Young has not provided evidence that Guerin deliberately created the conditions in an effort to pressure Young to leave.  Young left early on December 2 and did not report to work on December 6, 7 or 8.  On December 8 over a phone conversation, Kipke informed Young that despite his absence, which had warranted a warning after the December 2 early departure, he still had a job at Solo if he returned for his next shift later that day.  Young Dep. at 71.  In response, Young told Kipke that he did not know if he would report for that shift and, indeed, he failed to report.  *Id*. at 75-76.  As there is no evidence of deliberate efforts to induce Young to quit and the only evidence indicates that Solo would have allowed him to return despite his absences, a reasonable jury could not find that Solo constructively discharged Young.  However, as Solo did not argue this issue, Young was not on notice that this element was challenged and had no opportunity to offer a counter argument or evidence; thus, summary judgment is inappropriate.

C.   Detinue

Detinue "is simply a possessory action for the recovery of personal chattels unjustly detained."  *Durst v. Durst*, 232 Md. 311, 314 (1963) ("Durst II").  In Maryland, "[t]he common-law

10

action of detinue lies for the recovery of personal chattels
unjustly detained by one who acquired possession of them either
lawfully or unlawfully . . .." *Durst v. Durst*, 225 Md. 175, 178
(1961) ("Durst I").  Indeed, "[i]t is based on right of
possession in the plaintiff."  *Id*.  However, it is "maintainable
only against one who has the goods in his possession." *Mylander
v. Chesapeake Bank of Baltimore*, 159 A. 770, 771 (1932).

"An employer is vicariously liable for the torts of its
employee when the employee committed the tort within the scope of
his employment."  *Perry v. FTData, Inc.*, 198 F.Supp.2d 699 (D.
Md. 2002).  The evidence indicates that Guerin retained Young's
tools in Solo's facility, and did so as his group lead with the
knowledge of his supervisor.  Moreover, Solo has offered no
evidence that Guerin has taken the tools off premises.
Accordingly, there is a genuine issue of material fact whether
Solo, through Guerin, has retained Young's tools.

D.   Wrongful discharge

Maryland law requires a plaintiff claiming wrongful
discharge to allege: (1) he was discharged; (2) his discharge
violated a clear mandate of public policy; and (3) a nexus
between the employee's conduct and the employer's decision to
fire the employee.  *King v. Marriott Inter. Inc.*, 160 Md. App.
689, 700 (2005).  Absent that contravening public policy,  "a
jury may not review any aspect of the employer's decision to

terminate and . . . the employer may . . . terminate an employer [sic] for any reason, even a reason that is arbitrary, capricious, or fundamentally unfair." *Towson Univ. v. Conte*, 384 Md. 68, 82 (2004).

A cause of action for abusive discharge is "inherently limited to remedying only those discharges in violation of a clear mandate of public policy *which otherwise would not be vindicated by a civil remedy*." *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 605 (1989) (emphasis added).  As Title VII offers a civil remedy for the wrongs Young alleges, his claim for wrongful discharge fails.

III. Conclusion

For the reasons discussed above, Solo's motion for summary judgment will be granted as to Counts II, III, and IV and denied as to Counts I and V.


<u>May 15, 2007</u>                    _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge